**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

In re:

NU STYLE LANDSCAPE & DEVELOPMENT, LLC,

Debtor.

Bankruptcy Case No. 23-14475 TBM
Chapter 11

_____

**ORDER DENYING DEBTOR'S EMERGENCY MOTION TO ADJOURN EVIDENTIARY HEARING ON (I) CONFIRMATION OF THE DEBTOR'S PLAN OF REORGANIZATION AND (II) UNSECURED CREDITORS' COMMITTEE'S MOTION TO CONVERT CASE TO CHAPTER 7**

_____

This matter comes before the Court on the "Debtor's Emergency Motion to Adjourn Evidentiary Hearing on (I) Confirmation of the Debtor's Plan of Reorganization and (II) Unsecured Creditors' Committee's Motion to Convert Case to Chapter 7" (Docket No. 517, the "Motion to Adjourn").

The Debtor, Nu Style Landscape & Development, LLC (the "Debtor"), filed for protection under Chapter 11 of the Bankruptcy Code on October 2, 2023. The date bears reemphasis. This Chapter 11 proceeding has been pending for over two years and four months — without confirmation of a Chapter 11 reorganization plan. Meanwhile, creditors have not been paid on their claims.

The Debtor requested two extensions of the exclusivity period to file a Chapter 11 reorganization plan under 11 U.S.C. § 1121(d). (Docket Nos. 156 and 236.) No creditors objected. So the Court granted such requests which resulted in delay. (Docket Nos. 186 and 240.) About ten months into bankruptcy, the Debtor finally filed its initial Chapter 11 reorganization plan and initial disclosure statement. (Docket Nos. 258 and 259, the "Initial Plan and Disclosure Statement.") After objections to the adequacy of the Initial Disclosure Statement, on September 19, 2024, the Debtor advised the Court that the Debtor did not wish to prosecute its Initial Plan and Disclosure Statement. (Docket No. 283.) Accordingly, on October 17, 2024, the Debtor submitted an amended Chapter 11 reorganization plan and disclosure statement. (Docket Nos. 297 and 298, the "Amended Plan and Disclosure Statement.") After objections to the adequacy of the Amended Disclosure Statement, on November 27, 2024, the Debtor advised the Court that the Debtor did not wish to prosecute its Amended Plan and Disclosure Statement. (Docket No. 325.) After being ordered by the Court to submit a new plan and disclosure statement by January 17, 2025, the Debtor asked for another extension. (Docket No. 346.) On April 1, 2025, the Debtor submitted a second amended Chapter 11 reorganization plan and disclosure statement. (Docket Nos. 369 and 370, the "Second Amended Plan and Disclosure Statement.") After further objections to the adequacy of the Second Amended Disclosure Statement, the Debtor filed another amended disclosure

statement. (Docket No. 392, the "Third Amended Disclosure Statement.") On May 22, 2025, the Court approved the adequacy of the Third Amended Disclosure Statement under 11 U.S.C. § 1125 and ordered a confirmation hearing on the Second Amended Plan to be conducted on July 10, 2025. (Docket No. 397.) After further objections to the Second Amended Plan, on July 2, 2025, the Debtor informed the Court that the Debtor did not intend to prosecute the Second Amended Plan to confirmation. (Docket No. 416.) Accordingly, the Court denied confirmation of the Second Amended Plan. (Docket No. 420.) So, then, the process started again. On September 22, 2025, the Debtor submitted a third amended plan and fourth amended disclosure statement. (Docket Nos. 442 and 443, the "Third Amended Plan and Fourth Amended Disclosure Statement.")

Apparently frustrated with the progress of the Debtor's reorganization efforts, on October 21, 2025, the Unsecured Creditors Committee filed a motion to convert the bankruptcy case from Chapter 11 reorganization to Chapter 7 liquidation. (Docket No. 460, the "Motion to Convert.") The Debtor opposed the Motion to Convert. (Docket No. 471.) On December 4, 2025, this Court convened a status and scheduling hearing on the Motion to Convert. (Docket No. 480.) At that hearing, the Unsecured Creditors Committee urged the Court to set a prompt evidentiary hearing on the Motion to Convert. The Debtor anticipated a further contested confirmation hearing and argued that the hearing on the Motion to Convert should be consolidated with any evidentiary hearing on confirmation of the Debtor's Third Amended Plan. Following the scheduling hearing, a creditor joined in the Motion to Convert. (Docket No. 482.) The Court set a three-day trial on the Motion to Convert for February 17, 2026. (Docket No. 480.)

Meanwhile, on November 10, 2025, the Court approved the adequacy of the Fourth Amended Disclosure Statement under 11 U.S.C. § 1125 and ordered a confirmation hearing on the Third Amended Plan to be conducted on January 6, 2026. (Docket No. 470.) The Unsecured Creditors Committee objected to confirmation of the Third Amended Plan. (Docket No. 491.) On December 31, 2025, the Debtor submitted a fourth amended Chapter 11 reorganization plan. (Docket No. 495, the "Fourth Amended Plan.") On January 9, 2026, the Debtor submitted a fifth amended Chapter 11 reorganization plan. (Docket No. 499, the "Fifth Amended Plan.") The Court understands that the Debtor seeks confirmation of the Fifth Amended Plan.

A couple weeks before the confirmation hearing, the Debtor initiated efforts to discount the vote of one of the largest general unsecured creditors: DBC Irrigation Supply ("DBC"). The Debtor started by launching an objection to DBC's claim, which DBC opposed. (Docket Nos. 483 and 502.) Faced with a claims estimation hearing under Fed. R. Bankr. P. 3018(a)(4), the Debtor reached an agreement for the allowance of DBC's claim and DBC's vote to be recognized. (Docket No. 506.) In a Joint Status Report filed on January 21, 2026 (Docket No. 506), the Debtor and DBC stated, in relevant part:

> 1. Counsel for DBC met and conferred by telephone regarding DBC's Objection and Response to Debtor's Objection to Claim of DBC Irrigation Supply Pursuant to Fed. R. Bankr. P. 3007(a) and L.B.R. 3007-1 (Doc#: 483) and

2

> Request for Hearing (ECF No. 502, the "Request for Hearing") on January 19, 2026.
>
> 2. In conjunction with the Request for Hearing, DBC also filed its Amended Proof of Claim No. 28-2 (the "Amended Proof of Claim"), lowering the amount claimed as an unsecured creditor to $559,634.71.
>
> 3. *Based upon review of the Amended Proof of Claim, as well as a factual recitation by DBC's counsel and review of certain related invoices, the Debtor agrees to withdraw its Objection to Claim of DBC Irrigation Supply (ECF No. 483) (the "Claim Objection") and its contentions that (1) the amount of the Amended Proof of Claim is inflated and (2) that DBC received payments which constitute preferences under 11 U.S.C. § 547. As a result, the Debtor also withdraws its contention that DBC's claim should be disallowed in its entirety under 11 U.S.C. § 502(d) on those bases.*
>
> 4. Debtor agrees, contemporaneously with the filing of this Joint Status Report, to file an Unopposed Notice of Withdrawal of its Claim Objection.
>
> 5. *Accordingly, upon the Debtor's withdrawal of its Claim Objection, DBC's Amended Proof of Claim in the amount of $559,634.71 will be deemed allowed by operation of law under 11 U.S.C. § 502(a), such that DBC's vote on the Debtor's proposed Plan of Reorganization should be counted based on that amount at this time.*

(Docket No. 506.) (emphasis added). Plainly, based on the Debtors review and "a factual recitation by DBC's counsel," the Debtor on January 21, 2026, agreed to the allowance of DBC's claim in the amount of $559,634.71 and agreed that DBC's vote against the Third and Fourth Amended Plans would count. The Debtor further confirmed the foregoing on January 28, 2026, by submitting an amended ballot voting report stating that DBC's rejection vote would count. (Docket No. 513.) In any event, at the preliminary confirmation hearing, the Court set a three-day trial on confirmation of the Fifth Amended Plan and the Unsecured Creditors Committee objection, and at the renewed request from Debtor's counsel, the Court combined the evidentiary confirmation hearing with the evidentiary hearing on the Motion to Convert set to commence on February 17, 2026. (Docket No. 498.)

Most recently, on February 2, 2026, the Debtor appears to have elected a new strategy. Although the Debtor already agreed (on January 21, 2026) (based, in part, on statements of DBC's counsel) to the allowance of DBC's claim in the amount of $559,634.71 and had also already agreed that DBC's rejection vote would count, the Debtor apparently now wishes to renege on such agreements. The Debtor filed a motion to "designate" DBC's confirmation rejection vote under 11 U.S.C. § 1126(e) for alleged

3

bad faith occurring during a conversation between counsel for the Debtor and DBC on January 19, 2026 (*i.e.*, the same conversation which led to the Debtor's agreement that DBC's claim would be allowed and its rejection vote counted). (Docket No. 514, the "Designation Motion.") The Debtor issued a notice of the time to object to the Designation Motion and set February 17, 2026, the same day as the combined evidentiary hearing is set, as the date by which to object. DBC has not responded to the Designation Motion yet.

Next, the Debtor filed the Motion to Adjourn asking that the combined hearing on the Motion to Convert and confirmation of the Fifth Amended Plan be delayed so that the Debtor can litigate the Designation Motion first. No party has objected, but it all smells of improper gamesmanship and delay.

The Court rejects the last-minute Motion to Adjourn for multiple reasons. <u>First</u>, as recited in the foregoing procedural history, this case has languished in Chapter 11 for far too long — two years and four months already. The Debtor already has submitted six Chapter 11 reorganization plans. Creditors have been harmed by the delay. And, frankly, the Court should have put a stop to the Debtor's delay long ago. <u>Second</u>, the Motion to Convert was filed on October 21, 2025 and trial was set about two months ago. All of the pre-trial deadlines pertaining to the scheduled trial already have expired. Per 11 U.S.C. § 1112(b), conversion issues require timely adjudication. <u>Third</u>, the Designation Motion is not ripe yet. But, what seems clear is that the evidence pertaining to the Designation Motion would be quite different than that for the Motion to Convert and Chapter 11 confirmation. Presumably, the Designation Motion dispute will center on DBC's alleged bad faith conduct as well as possibly on the Debtor's conduct in apparently retracting its prior agreement with DBC about claim allowance and voting. In any event, DBC has not joined the Motion to Convert and did not file an objection to the Fifth Amended Plan. <u>Fourth</u>, there is no real reason to delay the Court's conduct of the trial on the Motion to Convert until the Designation is decided. Again, the issues are mostly different. In the Motion to Convert, the Unsecured Creditors Committee argued that the Court should convert the bankruptcy case from Chapter 11 to Chapter 7 because of "continuing loss to or diminution of estate assets" (including excessive administrative expenses) under 11 U.S.C. § 1112(b)(4)(A). (Docket No. 460 at 4-5.) And, the Unsecured Creditors Committee contends that "the Debtor lacks sufficient cash to pay all post-petition administrative expenses" and "the Debtor has failed to significantly reduce compensation to its insiders." (*Id.* at 5-7.) Further, the Unsecured Creditors Committee asserts that there has been "gross mismanagement of the Debtor" and the Debtor has failed to timely pay its taxes. (*Id.* at 7-8.) All these issues may be adjudicated without waiting for the results of the Designation Motion and do not depend on DBC's vote. <u>Fifth</u>, there is no legitimate reason to delay the Court's conduct of the trial on confirmation of the Fifth Amended Plan until the Designation Motion is decided. In its objection to confirmation, the Unsecured Creditors Committee contends: "the Debtor's [Fifth] Amended Plan is not proposed in good faith" under 11 U.S.C. § 1129(a)(3) (Docket No. 491 at 3-4); the Debtor's Fifth Amended Plan "violates the best interest of creditors test" under 11 U.S.C. § 1129(a)(7) (*Id.* at 5-7); the Debtor's Fifth Amended Plan "lacks feasibility" per 11 U.S.C. § 1129(a)(11) (*Id.* at 7-9); and the Debtor "lacks sufficient cash to pay all post-petition administrative expenses and the priority tax claims." (*Id.* at 10.) All

these issues may be adjudicated without waiting for the results of the Designation Motion and do not depend on DBC's vote.

It is true that if the Court barred DBC's vote, that may affect some legal issues such as cramdown and the "fair and equitable test" under 11 U.S.C. § 1129(b)(1). But again, there are many other factual and legal issues set for adjudication during the February 17, 2026 trial. Given the history of this case and the Debtor's conduct, the Court assesses that the best course from a case management, efficiency, and economic perspective is to proceed with the combined trial on February 17, 2026. If necessary, the Court may defer a final judgment on the Motion to Convert and/or confirmation of the Fifth Amended Plan until after adjudication of the Designation Motion. However, such deferment may not be necessary.

Accordingly, the Court DENIES the Motion to Adjourn.

DATED this 6th day of February, 2026.

> BY THE COURT:
>
> *Thomas B. McNamara*
> Thomas B. McNamara,
> United States Bankruptcy Judge