**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re: Nu Style Landscape & Development, LLC<br>           Debtor. | Case No. 23-14475-TBM<br><br>Chapter 11 |

**ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) AUTHORIZING THE DEBTOR TO DESIGNATE A STALKING HORSE BIDDER, (C) ESTABLISHING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (D) APPROVING THE FORM AND MANNER OF RELATED NOTICES, AND (E) GRANTING OTHER RELATED RELIEF**

This matter came before the Court upon the motion (the "**Motion**")[1] of the Debtor for entry of an order (this "**Order**"), (i) approving the proposed auction and bidding procedures (the "**Bidding Procedures**"), which are attached as **Exhibit A** hereto, for the potential sale (the "**Sale**") of substantially all of the assets (the "**Assets**") of the debtor (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**") through a proposed sale transaction (the "**Sale Transaction**"); (ii) approving the Debtor's ability to solicit and enter into an agreement (the "**Stalking Horse Agreement**") with a stalking horse bidder (the "**Stalking Horse Bidder**"), with certain inducements (the "**Stalking Horse Inducements**") in connection therewith; (iii) scheduling an auction for the Assets (the "**Auction**") (if necessary) and a final hearing for approval of the Sale of the Assets (the "**Sale Hearing**"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction (if any) and the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and Bidding Procedures.

Sale Hearing (the "**Sale Notice**," attached hereto as **Exhibit B**); (v) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "**Assumption and Assignment Procedures**," the notice of which is attached hereto as **Exhibit C**); and (vi) granting other related relief.  (Docket No. 522.)

This Court, having considered the Motion, and the arguments of counsel made, and the lack of any objection,[2] and, in accordance with Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      This Court has jurisdiction to consider the Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue of this Chapter 11 Case and the Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

B.      The predicates for the relief requested by the Motion are sections 105, 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 and applicable Bankruptcy Local Rules.

C.      The Debtor has set forth good and sufficient business reasons for the

---

[2] The Unsecured Creditors' Committee (the "UCC") filed a "Limited Joinder to Debtor's Motion for an Order." (Docket No. 526, the "Limited Joinder.")  In the Limited Joinder, the UCC joined the Motion "on a limited basis for the purposes of holding its Motion to Convert in abeyance for 60 days pending the Debtor's sale process."  The UCC did not object to the Motion.

[3] The findings, determinations, and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Court to approve some portions of the Motion. However, the Court cannot approve other portions of the Motion.

D.      The Bidding Procedures are fair, reasonable and appropriate, and represent the best method for conducting a Sale of the Assets and maximizing the value thereof for the benefit of the Debtor's estate.

E.      The form, manner, and sufficiency of the notice of the Bidding Procedures, the Auction, and the Assumption and Assignment Procedures are reasonable, appropriate, and sufficient under the circumstances.

F.      Entry of this Order is in the best interests of the Debtor's estate, its creditors and all other interested parties.

**THEREFORE, IT IS ORDERED THAT:**

1.      The Motion and the relief requested therein is GRANTED in part and DENIED in part as follows:

**The Bidding Procedures, Sale Notice**

2.      The Bidding Procedures (**Exhibit A**) are approved. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order. The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3.      The Sale Notice ("**Exhibit B**") is approved. Within 2 business days after the entry of this Order, or as soon thereafter as practicable, the Debtor (or its agents) shall serve this Order, the final Bidding Procedures, and the final Sale Notice, by first-class mail, postage prepaid, and e-mail (if known) upon all interested parties,

known creditors of the Debtor (including parties who have asserted any lien, encumbrance, claim or other interest in the Assets), all applicable federal, state, and local taxing authorities, each counterparty to the Debtor's contracts and leases, and all other parties who have requested or require notice under Bankruptcy Rule 2002.

### The Stalking Horse Agreement

4.      The Debtor is authorized, but not required, to enter into a Stalking Horse Agreement.  If the Debtor wishes to offer Stalking Horse Inducements to a suitable Stalking Horse Bidder, the Debtor must file a motion with the Court, on notice to interested parties, requesting approval of such Stalking Horse Inducements. No Stalking Horse Inducements are valid unless approved by the Court.

### The Auction

5.      The process and requirements associated with submitting a Qualified Bid, and any additional Bids at the Auction are approved as fair, reasonable, appropriate, and designed to maximize value of the Debtor's estate, creditors and other parties in interest.

6.      The Debtor is authorized to conduct the Auction with respect to the Assets if one or more Qualified Bids are received.  The Auction (if any) shall take place on **April 20, 2026 at 10:00 a.m.** (prevailing Mountain Time) via remote video conference or such other place and time as the Debtor shall notify all Qualified Bidders.

7.      If no Qualified Bid other than a Stalking Horse Bid is received by the Bid Deadline, the Debtor shall cancel the Auction, and the Stalking Horse Agreement

4

shall be deemed the Successful Bid and the Stalking Horse Bidder shall be the Successful Bidder.  The Debtor is authorized, subject to the terms of this Order and the Bidding Procedures, to take actions necessary, in the reasonable discretion of the Debtor, to negotiate with Bidders and conduct and implement the Auction.

8.    The Debtor may, in its business judgment, (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and otherwise best Bid and which is the next highest and otherwise best Bid; (iv) reject any Bid that is, inadequate, insufficient, not in conformity with the requirements of the Bidding Procedures, or not in the best interests of the Debtor and its estate; (v) impose any additional, reasonable terms and conditions with respect to all Potential Bidders; (vi) make non-material modifications to the Bidding Procedures; and (vii) implement additional procedural rules with respect to the conduct of the Auction that the Debtor determines.

9.    The good faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtor or its advisors, but shall not become property of the Debtor's estate absent further order of the Court.  The Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Back-Up Bidder shall be returned to such Qualified Bidder not later than five (5) Business Days after the Sale Hearing. The Deposit of the Back-Up Bidder, if any, shall be returned to the Back-Up Bidder upon the termination of such Back-Up Bidder's Asset Purchase Agreement in accordance with its terms.  If the Successful Bidder (or, if the Sale is to be consummated with the Back-Up Bidder, then the Back-Up Bidder) fails to

5

consummate the Sale because of a breach or failure to perform on the part of such Bidder, then the Debtor and its estate shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be consummated with the Back-Up Bidder, then the Back-Up Bidder) as part of the damages resulting to the Debtor and its estate for such breach or failure to perform.

10.     No later than **April 21, 2026**, the Debtor shall file a notice identifying any Successful Bidder and, if applicable, Back-Up Bidder.  No later than **April 21, 2026**, the Debtor shall file a Motion to Approve Sale and shall service notice on all interested parties.

## The Sale Hearing and Objections to the Sale Transaction

11.     The hearing to approve the Sale of the Assets to the Successful Bidder shall be held before the Court at a time to be determined by the Court after the Sale Objection Deadline (defined below).

12.     Objections, if any, to the Sale (a "**Sale Objection**") other than Assignment Objections (as defined below), including any objection to the sale of any Assets free and clear of liens, claims, encumbrances, and interests (the "**Interests**") pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder, as applicable, and the entry of any Sale Order, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and all orders of this Court, (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor and (d) be filed with the Court on or before **May 4, 2026** (the "**Sale Objection Deadline**").

13.     If any party fails to timely file with the Court and serve a Sale Objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding a Sale Objection, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion, or to the consummation and performance of the Sale, including the transfer of the Assets to the Successful Bidder, free and clear of all Interests pursuant to § 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for under § 363(f).

**Assumption and Assignment Procedures**

14.     The Assumption and Assignment Procedures and accompanying Assumption and Assignment Notice attached hereto as **Exhibit C** are reasonable and appropriate under the circumstances, fair to all counterparties to any Assigned Contract (defined below), and are approved.

15.     On or before 5 business days after entry of this Order, the Debtor shall file with this Court and serve on each party (a "**Contract Party**") to an executory contract or unexpired lease that may be assumed and assigned by the Debtor as part of the Sale Transaction (each, an "**Assigned Contract**"), a notice (the "**Assumption and Assignment Notice**") that shall (i) identify the assumed and Assigned Contracts (including the name and address of each Contract Party); (ii) state the cure amounts as of the Petition Date that the Debtor believes are necessary to be paid to assume such Assigned Contract pursuant to section 365 of the Bankruptcy Code (the "**Cure Amount**"); (iii) notify the Contract Notice Party that such party's contract or

7

lease may be assumed and assigned to a purchaser of the Assets at the conclusion of the Auction; (iv) state the date of the Sale Hearing and that objections to any Cure Amount or otherwise to assumption and assignment of the Assigned Contract will be heard at the Sale Hearing or at a later hearing, as determined by the Debtor and the Successful Bidder; (v) state that the proposed assignee has or will demonstrate its ability to comply with the requirements of adequate assurance of future performance of the Assigned Contract under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the assignee's wherewithal and willingness to perform under such executory contract or unexpired lease (such information, the "**Adequate Assurance Information**"); and (vi) state the Assignment Objection Deadline by which the applicable Contract Notice Party must file an objection to the Cure Amount (specifically, a "**Cure Objection**") or otherwise to the assumption and assignment of the Assigned Contracts (any such objection, an "**Assignment Objection**").

16.     Any Assignment Objection or Cure Objection, must (a) be in writing, (b) state with detail the nature of the objection and any Cure Amount the party to the Assigned Contract believes is required if different than the amount listed in the applicable Assumption and Assignment Notice (with appropriate documentation in support thereof), (c) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and any orders of the Court and (d) be filed with the Court on or before **April 13, 2026** (an "**Assignment Objection Deadline**").

17.     If a Successful Bidder other than the Stalking Horse Bidder prevails at

8

the Auction, then Contract Parties may submit a new Adequate Assurance Information Request to the Debtor and the deadline to object to assumption and assignment based on adequate assurance of future performance shall be extended until the Sale Hearing.

18.     Except as otherwise provided herein, Assignment Objections will be heard at the Sale Hearing and the Debtor may seek Court approval of assumption and assignment of the Assigned Contracts to the Successful Bidder at the Sale Hearing.

19.     If a timely Cure Objection cannot be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, at the option of the Debtor, be adjourned to a subsequent hearing.

20.     If no Assignment Objection is timely filed with respect to an Assigned Contract, then (i) the counterparty to such Assigned Contract shall be (a) deemed to have consented to, and shall be forever barred from, objecting to the Cure Amount or the assumption of the Assigned Contract.

**Related Relief**

21.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

22.     The Debtor is hereby authorized and empowered to take such actions as may be necessary to implement the terms and requirements established by this Order.

23.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h),

9

6006(d), 7052, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

24.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order, including, but not limited to, any matter, claim, or dispute arising from or relating to any Stalking Horse Agreement, the Bidding Procedures, any APA, any Qualified Bid, and the Auction.

25.     The Court has substantially modified the proposed Order and proposed Exhibits A, B, and C submitted by the Debtor.  Among other things: (a) the Court cannot approve any Stalking Horse Inducements in a vacuum without an identified Stalking Horse Bidder; (b) any Stalking Horse Inducements will be valid only if approved by the Court after motion and notice; (c) the Court cannot conduct a Sale Hearing without the Debtor first filing a Motion to Approve Sale and providing notice to interested parties (L.B.R. 6004-1(a)-(e)); (d) the Court will not set a Sale Hearing until there is a Successful Bidder; and (e) the Court DENIES all portions of the Motion and Exhibits A, B, and C not expressly approved herein.

BY THE COURT:

03/18/2026

_Thomas B. McNamara_

Honorable Thomas B. McNamara
United States Bankruptcy Judge

EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: Nu Style Landscape & Development, LLC<br>Debtor. | Case No. 23-14475-TBM<br><br>Chapter 11 |

## BIDDING PROCEDURES

**INTRODUCTION**.

On October 2, 2023, Nu Style Landscape & Development, LLC (the "**Debtor**") commenced the above-captioned voluntary chapter 11 case (the "**Case**") in the United States Bankruptcy Court for the District of Colorado (the "**Court**"). The Debtor filed, and the Court approved, in part, and denied in part, the Debtor's motion for an *Order (A) Establishing Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and Grant Certain Inducements as part of a Stalking Horse Agreement, (C) Establishing Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Related Notices, (E) Scheduling a Hearing to Consider the Proposed Sale Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (F) Granting Other Related Relief*[1] (the "**Bidding Procedures Order**").

Pursuant to the Bidding Procedures Order, the Debtor and its advisors are authorized to conduct the Sale and solicit bids for all manner of transactions that the Debtor believes will maximize value in this Case, including, without limitation, one or more transactions for the Sale of substantially all of the Debtor's assets or any portion thereof (such assets to be acquired, the "**Assets**" and such a bid, a "**Bid**"). The Bidding Procedures Order and these bidding procedures (the "**Bidding Procedures**") shall govern the solicitation, submission, receipt, consideration and analysis of all such Bids. Any party desiring to submit a Bid shall comply with the Bidding Procedures and the terms of the Bidding Procedures Order in all respects.

**ANY PARTY INTERESTED IN SUBMITTING A BID OR SERVING AS THE STALKING HORSE BIDDER SHOULD CONTACT THE DEBTOR'S ADVISORS WITH ANY QUESTIONS:**

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

Michael Best & Friedrich LLP
Justin M. Mertz, Esq.
790 N. Water Street, Suite 2500
Milwaukee, WI 53202
jmmertz@michaelbest.com
Tel: 414.225.4972

Michael Best & Friedrich, LLP
Jeffrey A. Weinman, Esq.
675 15th Street, Suite 2000
Denver, CO 80202
jeffrey.weinman@michaelbest.com
Tel : 720.245.2423

**SALE PROCESS TIMELINE SUMMARY**.

| Event | Date |
|---|---|
| Deadline to serve Bidding Procedures and Sale Notice | Within 2 business days following entry of the Bidding Procedures Order |
| Deadline to serve Notice of Assumption and Assignment | Within 5 business days following entry of the Bidding Procedures Order |
| Deadline for Debtor to Designate any Stalking Horse Bidder | April 6, 2026 |
| Bid Deadline | April 13, 2026 |
| ("Cure Cost/Assignment Objection Deadline")[2] | April 13, 2026 |
| Deadline for Debtor to Designate Qualified Bids and Opening Bid | April 17, 2026 |
| Auction (If Necessary) | April 20, 2026, at 10:00 a.m. |
| Deadline to File and Serve Notice of Successful Bidder | April 21 or upon conclusion of the Auction |
| Deadline to File Motion to Approve Sale | April 21, 2026 |
| Sale Objection Deadline | May 4, 2026 |

**FORM ASSET PURCHASE AGREEMENT**.

The Debtor has prepared a form of Asset Purchase Agreement (the "**APA**"), to be used in acquiring the Assets. The Debtor intends to provide copies of the APA to all parties who express interest in submitting a Bid. Pursuant to the APA, the Successful Bidder shall acquire the Assets **free and clear of any and all liens, claims, encumbrances, and interests** to the maximum extent permitted by section 363 of the Bankruptcy Code, with such interests to attach to the net proceeds of the Sale of

---

[2] The Cure Cost/Assignment Objection Deadline applies to all objections to the assumption and assignment of the Assigned Contracts, with the exception of objections related to adequate assurance of future performance by a Successful Bidder, which are due 14 days after the Sale Hearing.

the Assets with the same validity and priority as such interests applied against the Assets.

**STALKING HORSE BIDDER**.

At any time on or prior to April 6, 2026, the Debtor is authorized (but not required) to negotiate with any interested party and designate such party as an initial stalking horse bidder (the "**Stalking Horse Bidder**") for all or a portion of the Assets on commercially reasonable terms to be agreed upon by the parties pursuant to a binding asset purchase agreement (the "**Stalking Horse Agreement**"). If the Debtor wishes to extend stalking horse protections and inducements, the debtor must first file a motion with the Court, on notice to interested parties, regarding approval of such stalking horse protections and inducements. Such motion shall include the name of the Stalking Horse Bidder, a description of the proposed Stalking Horse Inducements, the purchase price, together with a copy of the Stalking Horse Agreement.

**PARTICIPATION REQUIREMENTS.**

*Potential Bidders*. To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in the Assets or part of the Assets (a "**Potential Bidder**") must deliver to each of the Debtor's advisors the following documents and information (collectively, the "**Preliminary Bid Documents**") on or before submission of any Qualified Bid (defined herein):

(i)    an executed confidentiality agreement on terms reasonably acceptable to the Debtor (a "**Confidentiality Agreement**"), if not previously executed or otherwise no longer binding;

(ii)   proof by the Potential Bidder of its capacity to close a proposed transaction for the sale or disposition (the "**Sale**") of some or all of the Debtor's Assets, which may include audited financial statements of, or verified financial commitments obtained by, the Potential Bidder;

(iii)  a non-binding preliminary indication of the cash purchase price in U.S. Dollars or other consideration that the Potential Bidder is prepared to pay or deliver in exchange for the acquisition of some or all of the Assets.

*Obtaining Due Diligence*. The Debtor and its advisors will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate Preliminary Bid Documents so that such Potential Bidder may submit a Bid (each, an "**Acceptable Bidder**", and each such bid, an "**Acceptable Bid**"). Notwithstanding anything herein to the contrary, the Debtor reserves the right to work with Potential Bidders to aggregate bids into a consolidated Acceptable Bid, or otherwise improve bids to be Acceptable Bids, prior to the Bid Deadline (defined herein). Any Stalking Horse Bidder shall be deemed an Acceptable Bidder, and the bid as set forth in any Stalking Horse Agreement, an Acceptable Bid. Only Acceptable Bidders shall be eligible to receive due diligence information and access to the Debtor's electronic data

3

room and to additional non-public information regarding the Debtor, the Debtor's business, and the Assets. The Debtor and its advisors shall coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access. The due diligence period will end on the Bid Deadline. The Debtor and its advisors are not responsible for, and will bear no liability with respect to, any information obtained by any Acceptable Bidder.

*No Collusion.* There may not be any communications between or among Acceptable Bidders regarding the Debtor, the Debtor's business, or the Assets unless the Debtor has previously authorized such communication in writing.  For the avoidance of doubt, nothing in this provision is intended to preclude multiple persons or entities from communicating with one another prior to becoming Acceptable Bidders in connection with establishing any joint venture or similar arrangement for the purpose of submitting a Bid or Bids in accordance with these Bidding Procedures.

## REQUIREMENTS FOR QUALIFIED BIDS.

A Bid will be considered a qualified Bid only if the Bid is submitted in writing by an Acceptable Bidder, by the Bid Deadline, and is deemed to comply with all of the following in the Debtor's business judgment (a "**Qualified Bid**," and such bidder a "**Qualified Bidder**"), provided that any Stalking Horse Bidder designated in accordance with the Bidding Procedures Order shall be deemed a Qualified Bidder:

*Purpose.*  Each Qualified Bidder submitting a Bid must state that the Bid includes an irrevocable and binding offer by the Qualified Bidder to purchase some or all of the Assets (identified with specificity) and specify the Debtor's liabilities and/or contracts that the Qualified Bidder seeks to assume.

*Assets and Liabilities.*  The Bid must clearly identify the following: (a) the Assets, or the portion thereof, to be purchased; and (b) the liabilities and obligations to be assumed, including any indebtedness to be assumed, if any.

*Purchase Price.*  The Bid must clearly set forth the cash purchase price, and any other non-cash consideration, to be paid.  If the Bid proposes an acquisition of only certain of the Assets, the purchase price must be applied to each Asset or package of Assets in that Bid.

*Deposit.*  Each Bid, including a Stalking Horse Bid, must be accompanied by a good faith deposit in an amount equal to not less than $50,000 in cash to be held in an escrow by the Debtor (the "**Deposit**").

*Marked Agreement.*   Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "**Bid_Documents**").  The Bid Documents shall include a schedule of all Assigned Contracts (as defined in the Bidding Procedures Order) to be assumed/assigned, if any, and a clearly marked/redlined version of the form APA

showing all changes requested by the Acceptable Bidder, as well as all other material documents integral to such Bid.

*Committed Financing*.  To the extent that a Bid is not a cash Sale, each Bid must include documentation to the reasonable satisfaction of the Debtor that demonstrates that the Acceptable Bidder has received sufficient unconditional debt and/or equity funding commitments to satisfy the Acceptable Bidder's purchase price and other obligations under its Bid, including providing adequate assurance of future performance under all contracts proposed to be Assigned Contracts by such Bid.  No Bids may be conditioned on obtaining financing or completion of any review of due diligence.

*Identity*.  The Bid must fully disclose the identity of each person or entity that (a) will directly or indirectly own and/or control 20% or more of the equity and/ or voting securities of the Qualified Bidder, including its full legal name, jurisdiction of incorporation or formation and its location in the Qualified Bidder's corporate structure, (b) has a connection or agreement with the Debtor or with any other prospective bidder for some or all of the Assets or any officer, director or equity security holder of the Debtor.

*Irrevocable*.  A Bid must be irrevocable and binding; provided that if the Bid is not selected as the Successful Bid or Backup Bid (defined below), the Bid may be revoked after consummation of the Sale anticipated under the Successful Bid or Backup Bid.

*Backup Bidder*.  Each Bid must contain an agreement for the Acceptable Bidder to be a Backup Bidder (as defined below) if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid.

*As-Is, Where-Is*.  The Bid must include the following representations and warranties: (a) expressly state that the Acceptable Bidder has had an opportunity to conduct any and all due diligence regarding the Debtor's businesses and the Assets prior to submitting its Bid; and (b) a statement that the Acceptable Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtor's businesses or the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Acceptable Bidder's proposed asset sale agreement ultimately accepted and executed by the Debtor.

*Authorization*.  The Bid must include evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Debtor with respect to the submission, execution,

and delivery of its Bid and Bid Documents, participation in the Auction, and closing of the proposed transaction(s) contemplated in such Bid.

*Disclaimer of Fees.* Each Bid (other than any Stalking Horse Bidder) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, "topping" or termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than a Stalking Horse Bidder) will be permitted to request, such compensation.

*Time Frame for Closing.* A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations in the Debtor's business judgment) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame reasonably acceptable to the Debtor. The Acceptable Bidder must commit to closing the proposed Sale(s) contemplated by the Bid as soon as practicable and provide perspective on any potential regulatory issues that may arise in connection with such Acceptable Bidder's acquisition of the Assets including timing for resolution thereof. In no event may the proposed transaction close later than May 20, 2026 (unless extended in writing by the Debtor) (the "**Closing Deadline**"), and any Bid must specifically acknowledge and agree to the same, unless extended in writing by the Debtor.

*Adherence to Bid Procedures.* Each Bid must include a representation that (a) the Acceptable Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code; and (b) the Bid constitutes a bona fide offer to consummate the proposed transactions and agrees to be bound by these Bidding Procedures.

*No Collusion.* The Acceptable Bidder must acknowledge in writing that (a) in connection with submitting its Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Potential Bidders, Acceptable Bidders or Qualified Bidders to control price; and (b) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

**BID DEADLINE**.

An Acceptable Bidder that desires to make a Bid must transmit via email (in .pdf or similar format) or deliver written copies of its Bid to the Debtor's advisors on or before April 13, 2026, (the "**Bid Deadline**") by email at jmmertz@michaelbest.com and jeffrey.weinman@michaelbest.com.

**QUALIFIED BIDDERS**.

No later than April 17, 2026 at 1:00 p.m. MST, the Debtor shall notify each Acceptable Bidder whether such party is a Qualified Bidder. If any Bid is determined by the

6

Debtor not to be a Qualified Bid, the Debtor will refund such Acceptable Bidder's Deposit on or before the date that is five (5) Business Days after the Bid Deadline.

Between the date that the Debtor notifies an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtor, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures. Each Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtor or its advisors.

**THE AUCTION**.

*General.* If the Debtor receives more than one Qualified Bid, the Debtor shall conduct the Auction to determine the Successful Bidder with respect to the Assets or portion of the Assets. If one or more Qualified Bid(s) exist for acquiring specific sub-groups of the Debtor's Assets, then the Debtor may, in the exercise of its reasonable business judgment conduct and auction or auctions in one or more lots for some or all of the Assets. If the Debtor does not receive more than one Qualified Bid, the Debtor will not conduct the Auction and will designate such Qualified Bid as the Successful Bid.

The Debtor will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtor's reasonable business judgment (the "**Opening Bid**"), and provide copies of the Bid Documents supporting the Opening Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Opening Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the Debtor's estate.

The Auction will be held telephonically, by videoconference, or in person as determined by the Debtor. If the Debtor determines that the Auction should be conducted in person, (a) the Debtor shall select a suitable venue for the Auction located within 100 miles of the Court, (b) not later than one (1) business day following the Bid Deadline, file a notice on the docket in the Case stating that the Auction will be held in person and identifying the street address of the location chosen for the Auction and serve such notice by email or similarly expeditious electronic means on all persons that have submitted Bids by the Bid Deadline.

*Participants and Attendees.* The Debtor and its advisors shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the

7

Opening Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.

Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction. Qualified Bidders participating in the Auction must appear in person (or through a duly authorized representative), telephonically, or through a video teleconference. Each Qualified Bidder participating in the Auction may be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid.

*Auction Procedures*. The Auction shall be governed by the following procedures, subject to the Debtor's right to modify such procedures in its reasonable business judgment:

*Opening Bid*. Bidding shall commence at the amount of the Opening Bid.

*Minimum Overbids*. Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Opening Bid for the relevant Assets (each such bid, an "**Overbid**"). In the event a Stalking Horse Bidder is selected as the Opening Bid, the initial minimum Overbid shall include (a) the amount provided for in the Stalking Horse Bid, *plus* (b) the aggregate amount of any court-approved Stalking Horse Inducements, *plus* (c) $50,000. Any subsequent Overbids by a Qualified Bidder above the initial Overbid shall be made in increments of at least $50,000 in cash, cash equivalents, or such other consideration that the Debtor deems equivalent.

*Highest or Best Offer*. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of any and all other Bids.

*Rejection of Bids*. The Debtor may, in its reasonable business judgment reject at any time before entry of an order of the Court approving a Qualified Bid, any bid that the Debtor determines is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtor, its estate, its creditors, and other stakeholders.

*Overbid*. Any Overbid made by a Qualified Bidder (including with respect to any Backup Bid (defined below)) must remain open and binding on the Qualified Bidder until the earlier of (a) the closing of a sale transaction for the applicable Assets pursuant to the Successful Bid and (b) 45 days after the date of the Sale Hearing, unless otherwise decided.

*Adjournment of the Auction.* The Debtor reserves the right, in its reasonable business judgment, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Sale.

*Successful Bidder.* Immediately prior to the conclusion of the Auction, the Debtor shall (i) determine consistent with these Bidding Procedures, which bid constitutes the highest or otherwise best bid(s) for the applicable Assets (each such bid, a "**Successful Bid**"); and (ii) notify all Qualified Bidders at the Auction for the applicable Assets of the identity of the bidder that submitted the Successful Bid (each such bidder, the "**Successful Bidder**") and the amount of the purchase price and other material terms of the Successful Bid.  The Debtor shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) as soon as reasonably practicable after closing the Auction.

*Backup Bidder.* Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid as compared to the Successful Bid at the Auction for the Assets, as determined by the Debtor in the exercise of its reasonable business judgment (the "**Backup Bid**"), shall be required to serve as a backup bidder (the "**Backup Bidder**"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated.  The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtor at the conclusion of the Auction at the same time the Debtor announces the identity of the Successful Bidder.

In the context of a Bid, the Backup Bid shall remain binding on the Backup Bidder until the earlier of (a) the closing of a sale transaction for the applicable Assets pursuant to the Successful Bid and (b) 45 days after the date of the Sale Hearing, unless otherwise decided.  If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtor may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtor will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.

**ACCEPTANCE OF SUCCESSFUL BID**

The Debtor's presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtor's acceptance of such Qualified Bid.  The Debtor will be deemed to have accepted a Bid only when the Bid has been approved by the Court at

9

the Sale Hearing.  The Debtor shall seek approval by the Court to consummate the Backup Bid, solely in the event the Successful Bidder fails to close the transaction as provided in the Successful Bid and with all rights reserved against the Successful Bidder.

**FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES**

All rights, titles and interests in and to the Assets shall be sold free and clear of all liens, claims, interests, and encumbrances (collectively, the "**Interests**"), subject only to any expressly assumed liabilities and expressly permitted encumbrances (each as provided in the Successful Bidder's purchase agreement), if any, in accordance with section 363(f) of the Bankruptcy Code, with such Interests to attach to the net proceeds received by the Debtor from the Sale of the Assets in accordance with the Bankruptcy Code, applicable non-bankruptcy law and any prior orders of the Court.

**RESERVATION OF RIGHTS**.

The Debtor reserves the right to, in its reasonable business judgment modify these Bidding Procedures in good faith, to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to selection of the Successful Bidder, additional customary terms and conditions on the Sale of the Assets, such as: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction and/or adjourning the Sale Hearing in open court; (d) canceling the Auction or electing not to hold an Auction; (e) rejecting any or all Bids or Qualified Bids; (f) adjusting the applicable minimum Overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind basis"; and (g) selecting a draft purchase agreement agreed to by a Qualified Bidder in connection with a Qualified Bid to serve as the purchase agreement that will be executed by the Successful Bidder or Successful Bidders, as applicable and with any necessary adjustments for the Assets and liabilities being purchased and assumed, upon conclusion of the Auction, if held.  The Debtor shall provide reasonable notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

**CONSENT TO JURISDICTION**.

All Potential Bidders, Acceptable Bidders and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Bid Documents, as applicable.

**SALE HEARING**.

10

The Debtor shall file a Motion to Approve Sale and Notice of Successful Bidder by April 20, 2026, and shall serve notice on all interested parties. The deadline for objection to the Sale Motion is May 4, 2026. A hearing to consider approval of the sale of the Debtor's Assets to the Successful Bidder or Backup Bidder (if applicable) (the "**Sale Hearing**"), will be set, before Hon. Thomas B. McNamara at the United States Bankruptcy Court for the District of Colorado, U.S. Customs House, 721 19th Street, Courtroom E, Denver, Colorado 80202 after receipt of the Motion to Approve Sale and the passage of the objection deadline.

Objections to the Sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to the Successful Bidder(s) and/or a Backup Bidder, as applicable, any of the relief requested in the Sale Motion, and entry of an order approving the Sale (the "**Sale Order**") must (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules and all orders of the Court; and (iii) be filed with the Court and served on the Debtor and its counsel by May 4, 2026.

**RETURN OF DEPOSITS**.

The Deposit of the Successful Bidder shall be applied to the purchase price at closing. The Deposits for each Qualified Bidder shall be held by the Debtor and shall be returned (other than the Successful Bidder and the Backup Bidder) on or before five (5) business days after the Auction. The Backup Bidder's Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the Successful Bidder fails to close, and the Debtor opts to close on the Sale Transaction(s) set forth in the Backup Bid, the Backup Bidder's Deposit shall be applied to the purchase price at closing. In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Bidder's Deposit shall be forfeited.

11

EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re: Nu Style Landscape & Development, LLC<br>          Debtor. | Case No. 23-14475-TBM<br><br>Chapter 11 |

**NOTICE OF AUCTION, SALE AND HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On March 18, 2026 the United States Bankruptcy Court for the District of Colorado (the "**Court**") granted in-part and denied in-part the Debtor's motion for an Order *(A) Establishing Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and Grant Certain Inducements as part of a Stalking Horse Agreement, (C) Establishing Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Related Notices, (E) Scheduling a Hearing to Consider the Proposed Sale Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (F) Granting Other Related Relief* (the "**Bidding Procedures Order**"),[1] which granted in-part and denied in-part the Debtor's motion seeking such relief (the "**Motion**").

The Bidding Procedures Order, among other things, (a) approved the bidding and auction procedures attached to the Bidding Procedures Order as **Exhibit A** (the "**Bidding Procedures**"); (b) authorized the debtor and debtor in possession in the above-captioned case (the "**Debtor**") to conduct an auction (the "**Auction**") for the sale (the "**Sale**") of substantially all of the Debtor's assets (the "**Assets**") in accordance with the Bidding Procedures; (c) authorized entry into a Stalking Horse Agreement (as defined herein) and; (d) approved procedures for the rejection and/or assumption and assignment of executory contracts and unexpired leases in connection with the Sale.All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures Order shall govern in all respects.

**<u>Stalking Horse Opportunity</u>**

---

[1] Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or Bidding Procedures, as applicable.

To facilitate the Sale of the Assets, the Debtor has also been authorized to solicit offers from interested parties to serve as the initial stalking horse bid for the Assets. The Debtor may execute an asset purchase agreement ("**Stalking Horse Agreement**") with such party, and the Debtor may request from the Court authorization to offer certain Stalking Horse Inducements as part of any Stalking Horse Agreement. No Stalking Horse inducements are valid unless approved by the Court. Such Stalking Horse Agreement, if any, is subject to higher and better offers submitted in accordance with the terms of the Bidding Procedures. Please take notice that the Debtor must designate any Stalking Horse Bidder on or before **April 6, 2026.**

All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or Bidding Procedures Order, the Bidding Procedures or Bidding Procedures Order, as applicable, shall govern in all respects.

### Assets to Be Sold

The Debtor is offering the sale of all of its Assets in one or more lots. Except as otherwise provided in a Stalking Horse Agreement or an Asset Purchase Agreement submitted by a Successful Bidder, the Debtor is seeking to sell its right, title, and interest in and to the Assets free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, as more fully defined in the Sale Order, the "**Interests**"), subject only to any Assumed Liabilities and Permitted Encumbrances (each as may be defined in a Stalking Horse Agreement or in any Asset Purchase Agreement of a Successful Bidder, as applicable), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale with the same validity, force, effect, and priority as such Interests applied against the Assets as of the Petition Date, subject to any rights, claims, and defenses of the Debtor.

### Key Dates and Deadlines

**Stalking Horse Deadline**. To be eligible to participate in the Auction pursuant to a Stalking Horse Agreement, a person or entity must submit a Stalking Horse Bid and enter into a binding Stalking Horse Agreement with the Debtor on or before **April 6, 2026** (the "**Stalking Horse Bid Deadline**").

**Bid Deadline**. To be eligible to participate in the Auction regardless of whether a Stalking Horse Bidder has been selected, a person or entity must submit a Qualified Bid in writing and in accordance with the Bidding Procedures, so as to be actually received by counsel to the Debtor, Michael Best & Friedrich LLP, 790 N. Water Street, Suite 2500, Milwaukee, WI 53202, Attn: Justin M. Mertz (jmmertz@michaelbest.com) and Jeffrey A. Weinman (jeffrey.weinman@michaelbest.com)

**Auction**. If one or more Qualified Bids (other than a Stalking Horse Bid) are received by the Bid Deadline, to determine the highest or otherwise best Qualified Bid, the Debtor will conduct an Auction on **April 20, 2026, at 10:00 a.m.** (prevailing Mountain Time) via remote video or in-person, at the Debtor's election. Except as otherwise determined by the Debtor, only the following parties, and their respective representatives and counsel, may attend the Auction: (i) the Debtor, (ii) the Stalking Horse Bidder, if any, (iii) the United States Trustee, (iv) any Qualified Bidder, and (v) any creditor of the Debtor that at least five (5) Business Days prior to the Auction delivers to Debtor's counsel a written request to attend the Auction (by email to jmmertz@michaelbest.com and jeffrey.weinman@michaelbest.com). The Debtor shall provide all Qualified Bidders with notice of all participants attending the Auction at least one (1) day prior to the Auction. Only the Stalking Horse Bidder (if any) and other Qualified Bidders will be entitled to make any Bids at the Auction.

**Sale Motion**. The Debtor shall file a motion to Approve Sale and Notice of Successful Bidder by April 21, 2026 and shall serve notice on all interested parties.

**Sale Objection Deadline**. Objections, if any, to the Sale (a "**Sale Objection**") (other than objections with respect to the cure amount or otherwise to the rejection and/or assumption and assignment of the Assigned Contracts (an "**Contract Objection**")), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder, as applicable, and the entry of any order approving the Sale, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, Bankruptcy Local Rules, and all orders of this Court, (c) state with particularity the legal and factual basis for the objection and the specific ground therefor, and (d) be filed with the Court on or before **April 20, 2026** (the **"Sale Objection Deadline"**), except that any party may file or supplement an objection after the Sale Objection Deadline based solely with respect to the events at or following the Auction and shall submit such objection before the Sale Hearing is scheduled to commence.

**Sale Hearing**.  A Hearing to consider approval of the Motion to Approve Sale will be set before Hon. Thomas B. McNamara at the United States Bankruptcy Court for the District of Colorado, U.S. Customs House, 721 19th Street, Denver, CO 80202.

<u>**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**</u>

**ANY PERSON OR ENTITY WHO FAILS TO FILE AND SERVE AN OBJECTION TO THE PROPOSED SALE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THIS NOTICE BY THE SALE OBJECTION DEADLINE OR OTHERWISE ABIDE BY THE PROCEDURES SET FORTH IN THE BIDDING PROCEDURES REGARDING AN OBJECTION TO THE SALE TRANSACTION SHALL BE FOREVER BARRED**

**FROM ASSERTING ANY OBJECTION TO THE PROPOSED SALE AND TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL INTERESTS.**

### Submitting a Bid and Obtaining Additional Information

Any party interested in submitting a Bid for the Assets should review the Bidding Procedures and Bidding Procedures Order carefully and contact the Debtor or its advisors. **Failure to abide by the Bidding Procedures and the Bidding Procedures Order may result in the rejection of your Bid.**

Copies of the Motion, Bidding Procedures Order, Bidding Procedures, form APA, and any Stalking Horse Agreement may be obtained, from the undersigned attorneys via email, or for a per page fee via the PACER (Public Access to Electronic Court Records) system. For registration and use instructions, see pacer.psc.uscourts.gov/index.html.

Dated: March 18, 2026.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**

*/s/ Bailey C. Pompea*
Bailey C. Pompea, Esq.
Jeffrey A. Weinman, Esq.
675 15th Street, Suite 2000
Denver, CO 80202
Tel: 720.240.9515
Bailey.Pompea@michaelbest.com
Jeffrey.Weinman@michaelbest.com

Davis W. Sullivan, Esq.
790 N Water St., Suite 2500
Milwaukee, WI 53202
Tel: 414.271.6560
Davis.Sullivan@michaelbest.com

*Counsel for Debtor Nu Style Landscape & Development, LLC*

4

EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re: Nu Style Landscape & Development, LLC<br>Debtor. | Case No. 23-14475-TBM<br><br>Chapter 11 |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On, March 18, 2026, the United States Bankruptcy Court for the District of Colorado (the **"Court"**) granted in-part, and denied in-part the Debtor's motion for an *Order (A) Establishing Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder and Grant Certain Inducements as part of a Stalking Horse Agreement, (C) Establishing Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (D) Approving the Form and Manner of Related Notices, (E) Scheduling a Hearing to Consider the Proposed Sale Free and Clear of All Liens, Claims, Encumbrances, and Interests, and (F) Granting Other Related Relief* (the **"Bidding Procedures Order"**),[1] which, among other things, (a) approved the bidding and auction procedures attached to the Bidding Procedures Order as **Exhibit A** (the **"Bidding Procedures"**); (b) authorized the debtor and debtor in possession in the above-captioned case (the **"Debtor"**) to conduct an auction (the **"Auction"**) for the sale (the **"Sale"**) of substantially all of the Debtor's assets (the **"Assets"**) in accordance with the Bidding Procedures; (c) authorized entry into the Stalking Horse Agreement (as defined herein) and (d) approved procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (the **"Assumption and Assignment Procedures"**).

As part of the Sale, and pursuant to the Assumption and Assignment Procedures, the Debtor may assume and assign certain executory contracts and unexpired leases (collectively, the **"Assigned Contracts"**) to the Stalking Horse Bidder or any other Successful Bidder pursuant to section 365 of the Bankruptcy Code.

---

[1] Unless otherwise indicated, capitalized terms used but not defined herein shall have the meaning ascribed to them in the Bidding Procedures Order.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A CONTRACT OR LEASE THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE.**

### Assigned Contracts and Cure Amounts

Set forth on **Exhibit A** hereto are (a) the Assigned Contracts that the Debtor currently intends to assume and assign to the Stalking Horse Bidder or the Successful Bidder in connection with the Sale (collectively, the **"Assigned Contracts"**), and (b) the amounts (the **"Cure Amounts"**) that the Debtor believes are owed to each counterparty to each Assigned Contract to cure any defaults existing under the Assigned Contracts as of October 2, 2023 (the **"Petition Date"**) under section 365(b)(1) of the Bankruptcy Code. Other than the Cure Amounts listed, the Debtor is not aware of any amounts due and owing under the Assigned Contracts as of the Petition Date. If no Cure Amount is listed for a particular Assigned Contract, then the Debtor believes that there is no Cure Amount outstanding. Any undisputed amounts that become due and owing after the Petition Date will be satisfied in the ordinary course by the Debtor or the Successful Bidder. **The inclusion of an Assigned Contract on Exhibit A shall not constitute an admission that such Assigned Contract is an executory contract or lease or that such Assigned Contract will ultimately be assumed by the Debtor and assigned to the Successful Bidder**.

The Debtor asserts that any Successful Bidder will comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code. Information regarding the Stalking Horse Bidder's (or its designated affiliate's) ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) and, if applicable, section 365(b)(3) of the Bankruptcy Code, including, without limitation, the assignee's financial wherewithal and willingness to perform under the Assigned Contracts (the **"Adequate Assurance Information"**), will be made available upon request by contacting counsel to the Debtor.

**Assignment and Cure Objection Deadline**. Objections to the proposed assumption and assignment of an Assigned Contract to the Stalking Horse Bidder (an **"Assignment Objection"**), including the adequate assurance of future performance by the Stalking Horse Bidder or any Successful Bidder to the proposed Cure Amounts (specifically, a **"Cure Objection"**) must, in each case, (i) be in writing, (ii) state with specificity the nature of the objection and, if the objection includes a Cure Objection, what Cure Amount the party to the Assigned Contract believes is required if different than the amount listed on **Exhibit A**, in all cases with appropriate documentation in support thereof, (iii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and any orders of the Court, and (iii) be filed with the Court on or **before April 13, 2026** (the **"Assignment Objection Deadline"**).

2

If a timely Cure Objection cannot be resolved by the parties, it may be heard at the Sale Hearing or, at the option of the Debtor, in consultation with the Successful Bidder, be adjourned to a subsequent hearing (an **"Adjourned Cure Objection"**). An Adjourned Cure Objection may be resolved after the closing date of the Sale Transaction; provided, that, with respect to any disputed cure amounts asserted in a timely filed Cure Objection, the Debtor shall, within ten (10) Business Days after the entry of the Sale Order, establish or cause to be established a cash reserve in an amount sufficient to pay the disputed cure amounts in full.

**Alternative Adequate Assurance Objection Deadline**. If a Successful Bidder prevails at the Auction, Adequate Assurance Information regarding the Successful Bidder may be available upon request by contacting counsel to the Successful Bidder. The deadline to file an objection to assumption and assignment based only on adequate assurance of future performance with respect to such Successful Bidder (an **"Adequate Assurance Objection"**) shall be extended to the Sale Hearing. Such Adequate Assurance Objection must be (i) in writing and specify the nature of such objection and (ii) filed with the Court no later than the beginning of the Sale Hearing. Notwithstanding the foregoing, all other Assignment Objections, including Cure Objections, must be filed by the applicable Assignment Objection Deadline.

Any Assignment Objection filed with the Court that includes confidential, non-public Adequate Assurance Information must and is authorized to be filed under seal unless disclosure of such confidential, non-public information is authorized by the Debtor and the applicable assignee or assignees. Unredacted versions of such objections shall be served upon the Debtor, the U.S. Trustee and the applicable assignee or assignees, with a copy to the Court's chambers.

**Sale Hearing**. A hearing to consider the Debtor's Motion to Approve Sale will be scheduled, before Hon. Thomas B. McNamara at the United States Bankruptcy Court for the District of Colorado.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY COUNTERPARTY TO AN ASSIGNED CONTRACT THAT DOES NOT TIMELY FILE AND SERVE AN ASSIGNMENT OBJECTION, INCLUDING A CURE OBJECTION, BY THE APPLICABLE OBJECTION DEADLINES STATED IN THIS NOTICE SHALL BE (I) DEEMED TO HAVE CONSENTED TO, AND SHALL BE FOREVER BARRED FROM OBJECTING TO, (A) THE CURE AMOUNT AND (B) THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT, AND (II) FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING ANY CURE AMOUNT, OTHER THAN THE CURE AMOUNT LISTED ON <u>EXHIBIT A</u> TO THIS NOTICE AGAINST THE DEBTOR, ANY SUCCESSFUL BIDDER, OR ANY OTHER ASSIGNEE OF THE RELEVANT CONTRACT.**

## Obtaining Additional Information

Copies of the Motion, Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse Agreement if any, may be obtained, for a per page fee via the PACER (Public Access to Electronic Court Records) system or by contacting the undersigned counsel. For registration and use instructions, see pacer.psc.uscourts.gov/index.html

You may obtain Adequate Assurance Information relating to a Sale on a confidential basis by submitting a written request to counsel for the Debtor.

Dated: March 18, 2026.

Respectfully submitted,

**MICHAEL BEST & FRIEDRICH LLP**

*/s/ Bailey C. Pompea*
Bailey C. Pompea, Esq.
Jeffrey A. Weinman, Esq.
675 15th Street, Suite 2000
Denver, CO 80202
Tel: 720.240.9515
Bailey.Pompea@michaelbest.com
Jeffrey.Weinman@michaelbest.com

Davis W. Sullivan, Esq.
790 N Water St., Suite 2500
Milwaukee, WI 53202
Tel: 414.271.6560
Davis.Sullivan@michaelbest.com

*Counsel for Debtor Nu Style Landscape & Development, LLC*