## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re ) | |
| ) | |
| NU STYLE LANDSCAPE & ) | Case No. 23-14475-TBM |
| DEVELOPMENT, LLC, ) | Chapter 11 |
| Debtor. ) | |

## UNSECURED CREDITORS COMMITTEE'S
## OBJECTION TO MOTION TO APPROVE SALE OF SUBSTANTIALLY ALL OF THE
## DEBTOR'S ASSETS, FREE AND CLEAR OF LIENS, CLAIMS AND
## ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. §§105, 363 and 365

The Unsecured Creditors' Committee ("Committee"), through counsel, respectfully submits this Objection to the Debtor's Motion to Approve Sale of Substantially All of the Debtor's Assets, Free and Clear of Liens, Claims and Encumbrances and Interests Pursuant to 11 U.S.C. §§105, 363 and 365 (the "Sale Motion"), and states as follows:

1. Nu Style Landscape & Development, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on October 2, 2023 ("Petition Date"). *See Docket No. 1.*

2. The Debtor is operating as a debtor-in-possession pursuant to Sections 1107 and 1108.[1]

3. On December 4, 2023, the Committee was formed pursuant to Section 1102 by appointment of the United States Trustee. *See Docket No. 109.*

4. Pursuant to Section 1109(b), the Committee may raise and may appear and be heard on any issue in a case under Chapter 11.

5. On October 21, 2025, the Committee filed its Motion to Convert Chapter 11 Case to a Case

---

[1]Unless otherwise indicated, all references to "Section" refer to the provisions of Title 11 of the United States Code.

Under Chapter 7. *See Docket No. 460.* The Committee incorporates by reference, the allegations and arguments made in its Motion to Convert. *See* Fed.R.Civ.P. 10(c)

6.    The Court set an evidentiary hearing on the Committee's Motion to Convert for February 17, 2026.

7.    As a result of the Committee's Motion and the voting on the Debtor's Fourth Amended Plan of Reorganization ("Plan"), the Debtor elected to withdraw its Plan from consideration for confirmation. *See Docket No. 520.*

8.    The Debtor then filed a Motion for an Order to, among other things, Establishing Bidding Procedures for the Sale of the Debtor's Assets ("Bid Motion"). *See Docket No. 522.*

9.    Following approval of the Bid Motion, the Debtor allegedly market its assets for sale.

10.   The Debtor now seeks to sell substantially all of its assets for less than their value, per the Debtor's own experts, and to an entity controlled by Mr. Michael Moilanen, the principal of the Debtor, the net result will be no benefit for unsecured creditors. *See Docket No. 553.*

11.   As set forth below, the Committee asserts the purported sale is merely a sham transaction designed to shield the Debtor's assets from all of the creditors, including the unsecured creditors, the Debtor failed to engage in any significant marketing efforts and the Debtor declined and/or refused to consider alternative offers.

## ARGUMENT

**A.    Applicable Law to Sale Motion**

12.   As set forth in the Sale Motion, Debtor may sell its assets if a sound business purpose exists for doing so. *In re Allen*, 607 Fed. Appx. 840, 843 (10th Cir. 2015); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

13.   Section 363(b) provides: "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

14.   To approve a sale of substantially all of Debtor's assets outside the ordinary course of business, the Debtor must show: (1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith. *In re Med. Software Sols.*, 286 B.R. 431, 439–40 (Bankr.D.Utah 2002). The court needs to find the evidence establishes a good business reason to grant an application to sell substantially all of Debtor's assets outside the confines of a confirmed plan. *Id.*

15.   In the sale of property of the estate, the debtors' primary goal is to maximize the proceeds received by the estate. *See, e.g., Integrated Resources*, 147 B.R. 650, 659 (S.D.N.Y. 1992)("'It is a well established principle of bankruptcy law that the . . . [Debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.'") (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)). A debtor maximizes value for creditors by selecting the 'highest and best bid, and thereby protecting the interests of [the] debtor, its creditors, and its equity holders.'" *In re GSC, Inc.*, et al., 453 B.R. 132, 169-170 (Bankr. S.D.N.Y. 2011) (quoting *In re Fin. News Networks, Inc.*, 126 B.R. 152, 157 (S.D.N.Y. 1991).

16.   As a result, courts routinely recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated*

*Resources*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets").

17.    As another division of this Court previously held; "a Bankruptcy Court . . . has the power to disapprove a proposed sale recommended by a trustee or debtor-in-possession if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable." *In re Psychrometric Systems, Inc.*, 367 B.R.670, 675 (10th Cir. 2007), citing *In re Landscape Properties, Inc.*, 100 B.R. 445, 447 (Bankr.E.D.Ark. 1988); *see also, In re Summit Corp.*, 891 F.2d 1, 5 (1st Cir. 1989) ("In order to achieve the goals of maximizing the value of the estate and protecting the interests of creditors, the court has plenary power to provide for competitive bidding."). In *Landscape Properties*, the court recognized that an objection to a sale "based simply on the fact that there is a higher offer is a valid objection…" 100 B.R. at 448.

**B.**    **Lack of Disclosure of Higher and/or Better Offers**

18.    While the Debtor's Sale Motion describes some of the processes the Debtor undertook to market the sale of assets, the Debtor fails to disclose the alternative offers proposed by the other interested parties. Under the Debtor's Bid Motion, the Debtor was the sole arbiter of who was a "Qualified Bidder." No independent person or party had the opportunity to review the Debtor's alleged business justification for selecting Elevated Landscape Group, LLC ("Insider Bidder") as the "Qualified Bidder" prior to this Court's determination of Sale Motion. Thus, the circumstances surrounding the Debtor's selection of the Insider Bidder is specious at best.

19.    Indeed, the Debtor has been operated during this bankruptcy case for the sole and exclusive

benefit of Mr. Michael Moilanen, primarily to pay down and/or satisfy his personal guarantees and/or debts on which he is personally liable by statute. These include Mr. Moilenan's failure to timely and fully pay all of the pre-petition (and now post-petition) taxes, including withholding taxes, to the IRS.

20. Irrespective of the offer from the Insider Bidder, the Debtor has espoused little, if any, business purpose to justify the sale of all of its assets to an entity controlled by Mr. Moilanen. The proposed purchase price does not fully satisfy all administrative claims, secured claims and priority claims. Moreover, given the Debtor's prior disclosures, the only likely recipient of the sales proceeds (if any) will be the IRS's debt of over $800,000.

21. The Committee interviewed other prospective purchasers for the Debtor's assets. These interested parties attempted to contact the Debtor and conduct their due diligence on the Debtor's assets. Such interested parties reported to the Committee that the Debtor refused them access to the Debtor's records for their due diligence. As a result, these interested parties did not submit a bid for the Debtor's assets.

22. As the Committee argued in its Motion to Convert, there is no value for unsecured creditors either in a reorganization or this proposed liquidation. *See Docket No. 460, at 5-7.* Rather, Mr. Moilanen has engaged others in his efforts to strip the valuable assets of the Debtor, primarily its ongoing contracts, from the debts he created not only pre-petition but continues to accumulate post-petition.

23. In other words, the Insider Bidder is not assuming all of the IRS debt under its proposed sale. Such effort is the last act of Mr. Moilanen's play leaving behind the debts he owes to the IRS which were not dischargeable in his personal bankruptcy case. *See Case No. 24-15123-TBM,*

*generally.*[2] Thus, Mr. Moilanen is foisting his IRS debt on the unsecured creditors who now must bear the burden of his pre and post-petition failures.

**C.     Debtor's Sale Motion Lacks Good Faith**

24.     A paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *In re Integrated Res.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . [Debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bag Co. v. Champion Int'l Corp. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

25.     Because the Bankruptcy Code does not define "good faith purchaser," many courts have adopted a traditional equitable definition of the phrase as "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors (In re Made in Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir.2005) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir.1978)). "Thus, to be covered under the statutory protection of § 363(m), [the purchaser] must demonstrate that it purchased the [p]roperty 'in good faith' and that it did so 'for value.' " *In re Made in Detroit, Inc.*, 414 F.3d at 581 (quoting *Cumberland Farms Dairy, Inc. v. Nat'l Farmers' Org., Inc. (In re Abbotts Dairies of Penn., Inc.)*, 788 F.2d 143, 147 (3d Cir.1986)).

26.     In assessing the good faith of a purchaser under Section 363(m), courts have considered factors such as:

a.      whether the sale was negotiated at arm's length;

---

[2]"Alas, poor Yorick! I knew him, Horatio." Shakespeare, *Hamlet* (Act 5, Scene 1).

b.      whether any officer or director of the debtor holds any interest in or is otherwise related to the potential purchaser; and

c.      whether fraud or collusion exists among the prospective purchaser, any other bidders, or the trustee. *In re Lionel Corp.*, 722 F.2d at 1071.

27.    While it is not *per se* bad faith for an insider to purchase property from the estate, where the proposed sale of estate assets is to a purported insider, the purchaser has a heightened responsibility to show that the sale is proposed in good faith and for fair value. *In re Medical Software Solutions*, 286 B.R. 431, 437-38 (Bankr.D.Utah 2002).

28.    A debtor's business judgment concerning a sale is entitled to deference, but this discretion is not without limit. *In re Broadmoor Place Investments, L.P.*, 994 F.2d 744, 746 (10th Cir. 1993); *In re Diplomat Const., Inc.*, 481 B.R. 215, 220–21 (Bankr. N.D. Ga. 2012) ("Even though the [debtor's] discretion is not without limit, the Court should not step in and assume a role and responsibility properly placed in the hands of the Trustee under these facts."); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998).

29.    Insiders forfeit their good faith status when it is shown they colluded with the debtor or engaged in conduct that was intended to control the sale price or take unfair advantage of other bidders. *See In re Bakalis*, 220 B.R. 525, 538 (Bankr.E.D.N.Y.1998) (citing *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 391 (2d Cir.1997)).

30.    Here, the sale of the Debtor's assets was controlled by Mr. Moilanen.  Mr. Nate Moilanen controls the Insider Bidder, and is also an employee of the Debtor. Clearly, the Insider Bidder is not a "disinterested person" within the meaning of Section 101(14A). Therefore, it defies all logic to suggest, as the Debtor argues in its sale motion, that the Insider Bidder's offer

was not the subject of collusion, unfair advantage, and exclusive control over both the buyer and the seller.

31. Prior to the submission of the Insider Bidder's bid, the Insider Bidder contacted the Committee to discuss the Committee's position on a proposed bid. The Insider Bidder disclosed to the Committee:

a. Mr. Michael Moilanen, not Nate Moilanen, was the "operator" of the Insider Bidder;

b. The Insider Bidder was owned by a holding company.

c. The ownership of the Insider Bidder's holding company was not disclosed to the Committee.

d. However, the Insider Bidder advised the Committee that several investors funded either the holding company or the Insider Bidder directly.

e. These investor funds were approximately $1,000,000 in cash to support a proposed bid by the Insider Bidder.

f. The Insider Bidder advised the Committee that it did not intend to either take on the Debtor's (and Mr. Michael Moilanen's) IRS debts, nor make a bid sufficient to payoff the IRS debt and allow a dividend to the unsecured creditors.

32. The Insider Bidder was formed on February 19, 2026 as a Colorado limited liability company, according to the records of the Colorado Secretary of State. The registered agent for the Insider Bidder is Colorado Registered Agents, Inc. *Id.* The person filing the Articles of Organization for the Insider Bidder was Nate Moilanen. *Id.*

33. The person forming the Insider Bidder is listed as NSL Holding Co, LLC. This company was formed one day prior to the Insider Bidder, on February 18, 2026. according to the records

of the Colorado Secretary of State. The registered agent for NSL Holding Co, LLC is Colorado Registered Agents, Inc. *Id.* The person filing the Articles of Organization for the NSL Holding Co, LLC was Nate Moilanen, who is also listed as the organizer of the company. *Id.*

34.  As an executive employee of the Debtor, Mr. Nate Moilanen is also charged with fiduciary duties to the Estate and unsecured creditors. Given these filings, Mr. Nate Moilanen may have violated his fiduciary duties to the Estate and unsecured creditors.

35.  The Committee also learned, through additional investigation, Mr. Michael Moilanen formed another company pre-petition, Lifestyle Landscape, LLC. Based upon the Committee's investigation, Mr. Michael Moilanen was funneling some of the Debtor's pre and post-petition contracts to this Company, in an effort to either directly compete against the Debtor or allow Mr. Moilanen to realize additional income. In either event, Mr. Michael Moilenan may have breached his fiduciary duties to the Estate and unsecured creditors.

36.  None of this information is disclosed either by the Debtor nor the Insider Bidder in connection with the Sale Motion. The Committee has reason to suspect additional information is being withheld by such parties based upon its communications with other industry actors.

37.  These circumstances alone however, compel a rejection of the Insider Bidder's bid and require denial of the Sale Motion.

**D.    Debtor Improperly Seeks to Sell Leased Assets**

38.  When assuming a lease, "[t]he Debtor becomes liable on the entire lease as if bankruptcy had not intervened. To receive the benefits of the contract, the Debtor must accept all the burdens

of the contract as originally agreed." *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 25 (Bankr. D. Kan. 2001). In other words, a debtor-in-possession must assume a contract *cum onere*, meaning subject to all of its burdens. *In re Eastman Kodak Co.,* 495 B.R. 618, 624 (Bankr. S.D.N.Y. 2013) (citations omitted); *see also In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 278 (Bankr. S.D.N.Y. 2013) ("Nevertheless, because a debtor must assume or reject an entire contract, and cannot cherry-pick the provisions it does not like, a court must consider the entire agreement.").

39.     Further, the Bankruptcy Code generally does not grant a debtor authority to sell personal property that the debtor only has a leasehold interest in. 11 U.S.C. § 363(b) (providing that a debtor in possession "may use, sell or lease, other than in the ordinary course of business, property of the estate . . . .). *See, e.g., Matter of Simicich*, 71 B.R. 48, 50 (Bankr. M.D. Fla. 1987) (determining the trustee had no right to sell leased property because "the chattels located on the premises were to be leased together with the real property, and no ownership interest in these chattels ever intended to pass to [the debtor].").

40.     Indeed, to convey equipment subject to a personal property lease, the Bankruptcy Code requires a debtor to assume the lease, cure any defaults, provide assurances of future performance, and assign the lease to the proposed purchaser pursuant to 11 U.S.C. § 365.

41.     Finally, where there has been a default on an unexpired lease, a debtor may only assume the lease if debtor cures the default or provides adequate assurance that the debtor will promptly cure. 11 U.S.C. § 365(b)(1)(A) (stating that where there has been a default on a lease, the trustee may not assume the lease unless the trustee "cures, or provides adequate assurance that the trustee will promptly cure, such default"). "Whether a cure is 'prompt' for purposes

of § 365(b)(1)(A) depends on the facts and circumstances of each case." *In re Embers 86th St., Inc.*, 184 B.R. 892, 900 (Bankr. S.D.N.Y. 1995).

42.     While the Debtor has filed two omnibus motions to assume both its leased equipment and its customer contracts, no such approval has yet been granted by this Court.  Moreover, the Debtor makes no allegation in its motion as to the position of the adverse parties to each of those contracts, let alone whether the insider relationship of the Insider Bidder was disclosed to such parties.

43.     Similarly, even assuming the Insider Bidder has funds remaining from its initial capitalization through funds from its parent holding company, such amounts are insufficient to provide either cure of the Debtor's defaults on such equipment leases and contracts, nor adequate assurance of future performance.

44.     Consequently, the Debtor cannot demonstrate that it can comply with the mandates of Section 365(b).

**E.      Conclusion**

45.     The Debtor provides scant information on the Insider Bidder.  The Insider Bidder provides no information on its good faith, its lack of disinterestedness, let alone the inherent conflicts of interest.

46.     For all intense and purposes, the Debtor is the seller and the buyer in the proposed sale transaction.  Neither the Debtor nor the Insider Bidder provide a full and complete business justification for a sale which strips the Debtor of its assets, fails to payoff all administrative, secured and priority debts, leaving nothing for unsecured creditors.  The Sale Motion must be denied.

WHEREFORE, the Unsecured Creditors' Committee respectfully requests this Court to enter an Order denying the Debtor's Sale Motion, to enter an Order converting this Case to a Case under Chapter 7 for cause, pursuant to 11 U.S.C. §1112(b), and to grant such other relief as the Court deems appropriate.

Dated: May 4, 2026.

Respectfully submitted,
BUECHLER LAW OFFICE, LLC

*/s/ K. Jamie Buechler*

_____
K. Jamie Buechler (*she/her*), #30906
10901 W. 120th Avenue, Suite 130
Broomfield, Colorado 80021
Tel: 720-381-0045
Jamie@KJBlawoffice.com
ATTORNEYS FOR THE COMMITTEE

## CERTIFICATE OF SERVICE

I certify that on May 4, 2026, I served a complete copy the **UNSECURED CREDITORS COMMITTEE'S OBJECTION TO MOTION TO APPROVE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. §§105, 363 and 365** on the following parties in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local  Rules:

**Via U.S. Mail and/or Email**:

Nu Style Landscape & Development, LLC
5208 Adams Street
Denver, CO 80216

**Via CM/ECF**:

See Attached List

*/s/ K. Jamie Buechler*

_____
For Buechler Law Office, LLC

Label Matrix for local noticing
1082-1
Case 23-14475-TBM
District of Colorado
Denver
Mon May  4 20:17:38 MDT 2026

Patrick R. Akers
Markus Williams LLC
1775 Sherman Street, Suite 1950
Denver, CO 80203-4350

Jean Arnold I
Arnold & Arnold LLP
7691 Shaffer Pkwy
Suite A
Littleton, CO 80127-3010

John H Bernstein
Kutak Rock LLP
2001 16th Street
Suite 1800
Denver, CO 80202-5298

Lacey S. Bryan
Markus Williams LLC
1775 Sherman Street, Suite 1950
Denver, CO 80203-4350

Kelsey Jamie Buechler
Buechler Law Office, LLC
10901 W. 120th Avenue, Suite 130
Broomfield, CO 80021-3419

J. Brian Fletcher
Onsager Fletcher Johnson Palmer LLC
1801 California Street
Suite 2400
Denver, CO 80202-2637

Lars H. Fuller
The Law Offices of Lars Fuller P.C.
3924 S Wabash Street
Denver, CO 80237-1719

Paul Arthur Jordan  Trustee
Np3 Llcompany
5 Tamarade Drive
Littleton, CO 80127-3517

Justin M. Mertz
Michael Best & Friedrich LLP
790 N. Water Street
Ste. 2500
Milwaukee, WI 53202-4108

Alan K. Motes
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294-6004

Kevin S. Neiman
Law Offices of Kevin S. Neiman, pc
PO Box 100455
Denver, CO 80250-0455

Matthew J. Ochs
555 17th St.
Ste., 3200
Denver, CO 80202-3921

Robert Padjen
Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Ste 8th Floor
Denver, CO 80203-2104

David M. Rich
Buechler Law Office, LLC
10901 W. 120th Avenue
Ste 130
Broomfield, CO 80021-3419

Michael S. Samelson
Wick & Trautwein, LLC
323 S. College Ave., Ste. 3
Ft. Collins, CO 80524-2845

Amalia Y Sax-Bolder
Reed Smith LLC
1400 Wewatta Street
Suite 350
Denver, CO 80202-5553

Robert J. Shilliday III
Shilliday Law, P.C.
2616 W. Alamo Avenue
Littleton, CO 80120-1921

Harry L. Simon
10200 E. Girard Ave.
Bldg. B, Ste. 120
Denver, CO 80231-5590

US Trustee
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294-6004

David C. Walker
Brown Dunning Walker Fein PC
7995 E. Prentice Ave
Suite 101-E
Greenwood Village, CO 80111-2710

Jeffrey Weinman
Michael Best & Friedrich LLP
675 15th Street
Suite 2000
Denver, CO 80202-4251

John F. Young
Markus Williams LLC
1775 Sherman Street, Suite 1950
Denver, CO 80203-4350

End of Label Matrix
Mailable recipients    22
Bypassed recipients     0
Total                  22